## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **THOMAS E. MILLER and** | ) | |
| **LYNN MILLER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO.  03-657-GPM** |
| | ) | |
| **ILLINOIS CENTRAL RAILROAD** | ) | |
| **COMPANY, d/b/a CANADIAN** | ) | |
| **NATIONAL/ILLINOIS CENTRAL** | ) | |
| **RAILROAD (CN/IC); NATIONAL** | ) | |
| **RAILROAD PASSENGER** | ) | |
| **CORPORATION; STS ACQUISITION** | ) | |
| **CO., d/b/a STS CONSULTANTS, LTD.;** | ) | |
| **CENTRAL STATES ENVIRONMENTAL** | ) | |
| **SERVICES, INC.; THOMAS E. RATHERT,** | ) | |
| **JOHN M. SOELL; and CARL G. DAY;** | ) | |
| | ) | |
| **Defendants/Third-** | ) | |
| **Party Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **S&M BASEMENTS and GARY SMITH,** | ) | |
| | ) | |
| **Third-Party** | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This is a case about a tragic accident that occurred on August 30, 2001, when Plaintiff

Thomas Miller's pickup truck collided with an Amtrak train.  All Defendants have moved for

summary judgment, and a hearing was held on January 30, 2006.  For the reasons set forth below,

the motions are granted.

## BACKGROUND

The tragic collision between Thomas Miller and the Amtrak train occurred on a private railroad crossing on the premises of Illinois Central Railroad Company ("Illinois Central") in Centralia, Illinois.  Miller was working at the site on behalf of his company, Third-Party Defendant, S&M Basements, which he owned and operated along with Third-Party Defendant, Gary Smith.  Miller was one of several subcontractors working at this site to build a new fuel depot and sand tower.  Defendants STS Acquisition Company ("STS") and Central States Environmental Services ("CSES") were also working at the job site.

The railroad crossing at issue was comprised of three sets of railroad tracks running in a north-south direction.  When traveling from the west to the east over the crossing, as Miller was on the day of his accident, the first set of tracks was a "rip" track used for the storage of boxcars awaiting repair.  The middle track was used primarily to switch cars; it was not a mainline track.  On the day of the accident, the middle track was not occupied by any cars.  The third track, the eastern most track where the accident occurred, was a mainline used by both Illinois Central and Amtrak.

According to various witnesses, a person crossing the tracks could move his vehicle in a slow fashion past the first track but not yet to the middle track to give a clear view to determine whether a train was approaching on the third track.  Miller's business partner, Gary Smith, testified during discovery that there was ample room to safely "creep" past parked cars on the first track to see whether a train was coming on the third track.

On the day of the accident, the Amtrak train was traveling northbound.  Miller approached from the west, traveling eastbound.  There is evidence in the record that he never slowed his vehicle,

stopped, or looked.  There is also evidence that Miller admitted that he never looked in the direction of the train.  Of course, Miller denies the admission.

The Amtrak locomotive was equipped with headlights and ditch lights that were operating and flashing at the time of the accident.  The engineer of the locomotive, Defendant Thomas Rathert, saw Miller's vehicle.  According to him, there were no material obstructions between Miller's truck and the locomotive.

The track was rated a class four track by the Federal Railroad Administration Track Safety Standards and had a federal prescribed speed limit of 79 miles per hour.  At the time of the impact, the train was traveling approximately 78 miles per hour.  There is evidence that the train blew its normal whistle pattern as it approached the private crossing, and when the engineer realized that Miller's vehicle was not going to stop, a frantic and erratic whistle pattern ensued.  Some eyewitnesses have confirmed that the locomotive's whistle sounded prior to impact, although there is some conflicting testimony on this point.

Miller had been working on the job site for approximately a week and a half before the collision.  Workmen from S&M Basements testified that they were aware a train usually passed by the job site on a regular basis and that the Amtrak passed everyday at 5:00 p.m.  Not surprisingly, Miller has no memory of the incident, but he testified in deposition that he was aware he was crossing train tracks and that the Amtrak train normally crossed the tracks at 5:00 p.m. every day.

Defendant STS was the onsite project manager for the fueling station improvement project at Illinois Central's rail yard.  Defendant CSES was a contractor retained by STS to perform excavation and cleanup work for the fueling station improvement project.  CSES contracted with Miller's business, S&M Basements, to provide concrete services.

Subject matter jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1349.  The complaint was filed in Marion County state court and removed by Defendant National Railroad Passenger Corporation ("Amtrak") on October 9, 2003.  The Court has original subject matter jurisdiction because the United States is the owner of more than one-half of the National Railroad Passenger Corporation's capital stock.  *See* 28 U.S.C. § 1349.

## ANALYSIS

The standard applied to summary judgment motions filed under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party.  Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.  The evidence must create more than some metaphysical doubt as to the material facts.  A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted).

The issue of proximate cause is almost always a question for the jury.  There are rare cases, however, when the issue can become a question of law for which summary judgment is appropriate.  This happens only when the undisputed facts lead to only one reasonable inference.  *Lockwood v. Bowman Constr. Co.*, 101 F.3d 1231 (7th Cir. 1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986)).  This is such a case.  *See Ayoub v. National R.R. Passenger Corp.*, 76 F.3d 794, 796 (6th Cir. 1996) (granting summary judgment to defendants in railroad crossing case where the plaintiff disregarded the signals and pulled around cars and into the crossing); *Sheehan v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 571 N.E.2d 796 (Ill. App. Ct. 1991) (granting summary judgment to defendant on the basis that a motorist's failure to heed warning signals was the sole and proximate cause of a crossing accident).

A motorist approaching a grade crossing must stop at the crossing and ascertain whether it is safe to proceed when a train is in a hazardous proximity to the railroad crossing under Illinois law. Specifically,

> Whenever any person driving a vehicle approaches a railroad grade crossing where the driver is not always required to stop, the person must exercise due care and caution as the existence of a railroad track across a highway is a warning of danger, and under any of the circumstances stated in this Section, the driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad and shall not proceed until the tracks are clear and he or she can do so safely.  The foregoing requirements shall apply when:
>
> ***
>
> 3.    A railroad train approaching a highway crossing emits a warning signal and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
>
> 4.    An approaching railroad train is plainly visible and is in hazardous proximity to such crossing;
>
> 5.    A railroad train is approaching so closely that an immediate hazard is created.

*See* 625 ILCS 5/11-1201(a)(3)(4) and (5).

The Illinois Supreme Court has held that if a motorist fails to heed a locomotive in hazardous proximity to a crossing, he is negligent as a matter of law.  *Coleman v. Illinois Central Railroad*, 319

N.E.2d 228, 231 (Ill. 1974) (reversing judgment in favor of motorist where there was not only an absence of evidence of due care on the motorist's part also affirmative evidence of lack of due care in not looking and heeding a plainly audible horn).   Defendants were not required to anticipate the possibility that Miller would disregard the approaching locomotive.  *See Dunn v. Baltimore & Ohio R.R. Co.*, 537 N.E.2d 738 (Ill. 1989).  "The law imposes a duty on all persons to exercise ordinary care. . . . [T]he imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society."  *Id. at* 745.

Although Miller argues that the crossing was dangerous because it had no lights, gates, pavement markings, or warnings, this was a *private* railroad crossing, and Defendants had no duty to mark it as Miller now claims it should have been.   Miller also argues that the railroad made the crossing more dangerous by placing a cut of boxcars too close to the crossing on the first of the three railroad tracks, which obstructed Miller's vision to the right.   According to Miller, he crept out trying to see past the boxcars, but by the time he could see it was too late.   Unfortunately, however, this argument is not supported by the record.   Miller himself has no recollection of the incident, and all of the other witnesses would testify that Miller did not slow down or stop.   As for Miller's argument that he couldn't see, it is not reasonable to assume Miller could not see the train when the train engineer could clearly see him.   The train was traveling at approximately 78 miles per hour and could not possibly stop to prevent the collision.   If Miller was paying attention and fulfilling his statutory duties, he could have easily stopped within a short distance (he was traveling 10 miles per hour or less). The Court agrees with Defendants that the sole proximate cause of this tragic accident was Miller's failure to look and stop.   The evidence on this point is so overwhelming that there is no issue for a jury to decide.

Of course, before ever getting to the issue of proximate cause, the Court would have to find as a matter of law that Defendants owed a duty of care to Miller.  The existence of a duty of care is always a question of law for the Court to decide.  *See Curatola v. Village of Niles*, 608 N.E.2d 882, 885 (Ill. 1993).  Illinois courts determine whether a duty of care exists by considering the common law duty factors of (1) reasonable foreseeability of the injury; (2) likelihood of the injury; (3) magnitude of the burden on defendants of guarding against the injury; and (4) consequences of placing the burden on defendants.  *Lee v. Chicago Transit Authority*, 605 N.E.2d 493 (Ill. 1992). The Illinois Supreme Court embraces Dean Prosser's view of the duty aspect of a negligence case.

> Necessary to any recovery based on the theory of common law negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk.  Whether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court.

*Bonds v. Washington*, 305 N.E.2d 535, 538 (Ill. 1973) (*citing* W. PROSSER HANDBOOK OF THE LAW OF TORTS, Section 37 (4th Ed. 1971)).

Illinois Central had no duty to provide any additional warnings on the private railroad crossing. *See Pearce v. Illinois Central Gulf R.R. Co.*, 411 N.E.2d 102, 106 (Ill. App. Ct. 1980) (noting that a "defendant railroad is under no legal duty, either statutorily or at common law, to guard or maintain a crossing for a private road").  The Court also finds as a matter of law that Defendants STS and CSES owed no legal duty to Miller.  STS was merely the design builder for the project at issue.  STS did not have a contract with S&M Basements, and the only entity that STS communicated with regarding the project was CSES.  STS was not responsible for the safety of the employees of subcontractors, and it was not responsible for having a lookout person or a flag person

at the railroad crossing at issue.

Finally, in order for this Court to impose a duty on a defendant, the occurrence at issue must have been reasonably foreseeable.

> 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight. We will not look back, as it was felicitously put by Justice Cardozo, 'at the mishap with the wisdom born of the event . . . .'

*Cunis v. Brennan*, 308 N.E.2d 617, 619 (Ill. 1974) (*quoting* W. PROSSER, HANDBOOK ON THE LAW OF TORTS, Section 31 (4th ed. 1971) and *Green v. Sibley, Lindsay & Curr Co.*, 117 N.E. 416, 417 (N.Y. 1931)). Neither STS nor CSES could have reasonably foreseen that Miller would traverse the private railroad crossing without first ensuring that it was safe to do so. For this reason, they are entitled to summary judgment on this basis as well.

### CONCLUSION

Accordingly, all motions for summary judgment (Docs. 120, 123, 124, 126, and 128) are **GRANTED**, and all cross-claims and third-party claims for contribution are dismissed on the merits. Plaintiff Lynn Miller's claim for loss of consortium likewise fails as a matter of law. This action is **DISMISSED** on the merits, and Defendants are awarded their costs. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 3/1/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge